Judge Owsley
delivered the opinion,
In November, 1789, William CorbiB made and published his will, containing the following provision: “Item, my will and desire is, that my daughter Aon Grant, shall have a young negro wench, to be purchased and raised out of that part of my estate not already bequeathed, during her natural life, and that her husband William Grant shall possess said slave during his life provided he shall be the longest liver: but if my said daughter Ann should die without issue, the said slave and her increase to return to my estate, and to be disposed of by my executors according to law.”
After the decease of the testator, the executor named in the will, purchased a negro woman according to the provision of of the will, and delivered her to Grant, the husband Of Ann, who was the daughter of the testator; and Ann having departed this life without issue, aud her husband having also died, this suit was brought by the administrator de bonis non with the will annexed of Corbin, to recover the negro woman and her increase from the administrator of Mosebv, who held the possession of the negroes, and refused to deliver them to the administrator of Corbitt.
The circuit court rendered judgment iu favor of the ad-* *290 ministrator of Corbin; from which the administrator of Moseby has appealed. The right of the appellee to recover, turns upon the construction to be given to the will. If it be construed to make the return of the negro, directed to be purchased, and her increase, to the testator’s estaté, depend on a general failure of issue, of his daughter Ann, it is well settled the limitation cannot be sustained; but if it be construed to make the return of the negroes depend upon the failure of the issue living at the time of the daughter Ann’s decease, it is equally clear that the limitation is good. In the latter case, the contingency must happen within a life in being; but in the former case, the contingency might not happen either within a life or lives in being, or twenty-one years thereafter, and it is an established rale, th3t a contingency which may not happen within a life or lives in being, and twenty one years thereafter, is too remote to support an executory devise. In forming an opinion on the import of the will, we have been unable to derive much aid from the adjudications of the English courts — not, however, because no analogous case has ever been presented to them for adjudication; but because of the great alternation of opinion on the import of the words, “dying without issue”. For whilst judges of the most distinguished abilities have held that the words, “if the legatee shall die without issue”, then over, in bequests of personal property, ex vi termini, and of themselves, signify a dying without issue living at the death of the first-taker; others, of equal eminence, have held that those expressions are not so to be understood, but on the contrary, shall be construed to mean an indefinite failure of issue. 3, Saun. 388, n. 3. i. A distinction has also been taken, by some of the judges of England, between the import of the words “dying without issue”, in relation to real and personal property. When used in the devise of real estate, they admit, the words should be understood a general failure of issue, but when employed in the bequest of persona! property, they maintain, that the words imply a “dying without issue living at the death of the legatee for life”. The present case, however, does not require of us to decide upon the correctness of the distinction taken by those judges between the two species of estate. At the date of the will in question, negroes were personal property, and it is only requisite for this court to give a construction in relation to that species of property. And if *291 the cause be disentangled from the embarrassment resulting from the many conflicting adjudications, and the intent °f the testator be sought for, by looking into the words employed in the will, having, at the same time, regard to the rules of law, there can be little doubt but, by the words “dying without issue”, the testator intended issite living at tbe death of his daughter Ann. Tbe will contains no express bequest to the issue of Ann, but an estate may be created by implication as well as by express words; and by directing the negro to return to his estate in case his daughter Ann died without issue, conclusively implies an intention in tbe testator, that it should not return if there should be any such issue; and as strongly implies that, if there should be such issue living at the death of Ann, the negro and her increase should pass to them under the will, and not by descent from the mother. We are aware that, “issue,” is said to be a term of limitation and not of purchase, but that must depend upon the sense in which it is employed; and if from any expression in the will the testator appears to have intended the issue to take by purchase, the intention must prevail. And that the testator intended the issue of Ann to take by purchase, and not by descent from her, is obvious from other provisions in the will. By giving his daughter an estate for life in the negroes, strongly implies an intention that she should not take a greater estate; and by giving to her husband the use of the negro for his life, in case be survived Ann, shews an intention that the husband should not have a greater interest. But if, instead of construing the words, ‘dying without issue,’ to be words of purchase, we should construe them to be words of limitation, and there by enlarge the estate expressly given to the wife for life, to an estate tail, the intention of the testator would not only be defeated as to the interest tended to be given to the issue, but as to that also which was expressly given to the wife and her husband. For it is an incontrovertable; rule, that where an estate in a chattel is limited to one in tail, he thereby becomes vested with the whole estate. 3 Saund, 388, N. 3, i.
A testator devising a slave “to A fot life, and if she should die without issue, then the slave and her increase to return to his estate after the death of her husband,” means a dying without issue living at her death, and not an indefinite failure of issue; that this was the intent of the testator is to be inferred from the implied bequest in favor of the issue of A if she had any at the time of her death, and the implied intent that if any such issue existed at her death, they should take by purchase and not by descent from her.
sue is sometimes taken as a term of limitation, but whether The term ⅛--a ration or of purchase be tis-theTntent^of the testator, gather-test "of the with here the ¡íj¿u¿stAfur shews he meant she not tafe 0* itimee, and tbe b< quest i,° life,proves he intended the no greater estate;whereas lfíhéterm ken^s a*word of limitation, the slave, con-testator, would ia-f**"'1* Jes* hand
By enlarging the bequest to the wife to an estate in tail, therefore, she would not only thereby become invested with the absolute estate, but as she was then married, the ne-groes could not pass by descent from her to her heirs,, but conlrary to the plain intention of the testator, vest absolutely in her husband.
Hardin for appellant, Bibb for appellee.
If, then, the expressions, ‘dying without issue,’• is understood to have been employed by the testator as words of purchase and not as words of limitation, it seems to follow that the testator must have intended issue “living at the death of his daughter. For it is perfectly clear the testator intended the issue should lake the negroes immediately Upon his daughter’s death, if that event should happen a*--ter the death of her husband; and it is only such as might be then living that could possibly lake.
It was, therefore, on the failure of issue living at the death of his daughter, the testator intended the negroes should return to his estate; and as the daughter had no such issue, the judgment in favor of the appellees, claiming on behalf of the testator’s estate, must be affirmed with cost and damages upon the damages recovered in the court below. *